IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 18-75-JDW-4 |
| ) | |
| DION OLIVER, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM</u>**

Juries are the bedrock of our justice system. We leave vital questions, including decisions about citizens' life and liberty, to their peer rather than to judges. To be sure, a judge explains the law to the members of the jury (who probably do not have any legal training) and tells the jurors to follow those instructions. But after a jury gets those instructions, its deliberations are its own. The secrecy of those deliberations ensures that jurors can express their views openly. To preserve the secrecy of those deliberations, we accept some risk that jurors might get confused about the evidence or the instructions, or even choose to disregard them entirely and engage in jury nullification.

At the end of Dion Oliver's trial, the jurors received instructions to which the Parties agreed, including the Third Circuit's pattern instruction on vicarious liability. Those instructions were, at times, challenging for someone without legal training. So it's no surprise that they sent a note expressing some confusion about the vicarious liability

instruction. But they worked through their confusion and reached a verdict. Mr. Oliver thinks that the jury's confusion, and the jury charge itself, warrant a new trial. I disagree, though. The jury did exactly what it was supposed to do, and the snapshot of a moment of jury confusion does not mean the jury did something wrong or unfair. I will therefore deny his motion for a new trial.

I.   **BACKGROUND**

Mr. Oliver was charged with five counts: (1) conspiracy to stalk; (2) stalking; (3) conspiracy to kidnap; (4) kidnapping; and (5) the use and carrying of a firearm in relation to a crime of violence. Over the course of a five-day trial, the Government presented the testimony of one of Mr. Oliver's co-conspirators, other witness testimony regarding Mr. Oliver's location during the events at issue, security camera footage, weapons and shell casings used in commission of the crimes, cellphone tower location data for Mr. Oliver and his co-conspirators, DNA evidence that linked Mr. Oliver to one of the crime scenes, and expert testimony.

Before charging the jury, I held a charging conference during which both Parties agreed to the language of the jury instructions. The final jury charge included a joint instruction for the two conspiracies, which distinguished the conspiracy to stalk and conspiracy to kidnap counts and included separate lists of facts that could satisfy the "overt acts" element of conspiracy for those separate counts. (D.I. 422-1 at 62, 70.) The Parties agreed to the conspiracy instruction and lists of overt acts on the record.

The Parties also agreed to an instruction on vicarious liability, which was based on the Third Circuit's model jury instruction for *Pinkerton* liability. *See* 3d Cir. Model Crim. Jury Instructions § 7.03 "Responsibility For Substantive Offenses Committed By Co-Conspirators (Pinkerton liability)." That instruction explained that one way to find Mr. Oliver guilty of stalking, kidnapping, or the use and carrying of a firearm, was "based on the legal rule that each member of a conspiracy is responsible for crimes and other acts committed by the other members, as long as those crimes and acts were committed to help further or achieve the objective of the conspiracy and were reasonably foreseeable to the defendant as a necessary or natural consequence of the agreement." (D.I. 422-1 at 82.) As the first element for vicarious liability, I instructed the jury that it must find that "Mr. Oliver was a member of the conspiracy charged in the Second Superseding Indictment." (*Id.*) The instruction also repeatedly referenced each conspiracy offense separately.

During its deliberations, the Jury sent me a note, which stated:

- We are at a deadlock in our decision
- We have all discussed Count (5)
    - 1st – Yes
    - 2nd – No
    - 3rd – No
- We are now stuck because on Page 77 where if convicted of any charge they are guilty of all charges. We are not okay that he is automatically guilty of all charges.

(D.I. 17.)

3

I assembled the Parties to discuss how to respond to the jury's note. However, before the Parties arrived, the Jury notified me that it reached a verdict. After reading the note into the record, I brought the jurors into the courtroom and confirmed with them that they had continued to work through their deadlock after sending the note, that they had resolved any questions that they had regarding Count Five, and that they had reached a unanimous verdict on all Counts. The jury returned a verdict of guilty on Counts One, Two, Three, and Four, and a verdict of not guilty on Count Five. Additionally, the Jury answered "no" to two special interrogatories that asked whether it found that Mr. Oliver used or discharged a firearm, and "yes" to an interrogatory that asked if it found that the kidnapping caused the victim's death.

The jury's verdict was entered on November 16, 2022. Mr. Oliver filed a Motion For A New Trial Pursuant to Fed. R. Crim. P. 33 on November 20, 2022. On December 6, 2022, I ordered the Government to respond to the Motion, and the Government filed a Response on January 6, 2023.

## II.     LEGAL STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 motions are disfavored, and are only granted if the Court "believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." United States v. Salahuddin, 765 F.3d 329, 346 (3d Cir. 2014) (quoting United

*States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). To evaluate a Rule 33 motion, a district court exercises its own judgment to assess the Government's case. *Id.* (citations omitted).

Courts grant Rule 33 motions grounded on unpreserved trial errors for plain error. *United States v. Tiller*, 302 F.3d 98, 105 (3d Cir, 2002) ("failure to object at trial, absent plain error, constitutes a waiver of the issue for post-trial purposes"). Plain error exists when: (1) there was an error; (2) that error was "plain"; (3) it prejudiced or affected substantial rights; and (4) failure to correct it would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 732, 734-46 (1993)). A court's review of a jury instruction for plain error considers the instructions as a whole. *Id.*

### III. DISCUSSION

#### A. The Jury Instruction Was Not Plain Error

It is unlikely that a district court commits plain error when its jury instruction is based on the Third Circuit's Model Instructions. *See United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) ("We have a hard time concluding that the use of our own model jury instruction can constitute error"). The Third Circuit has held that using the Model Instruction for co-conspirator liability can't constitute plain error. *United States v. Gonzalez*, 905 F.3d 165, 190 (3d Cir. 2018). Therefore, Mr. Oliver's Motion fails absent some substantive change to the language of the instruction.

5

Mr. Oliver points to language taken verbatim from the model instruction that he claims constitutes plain error. As the first of four elements required to find the Defendant guilty of an offense by vicarious liability, the Court instructed the jury that it must find "[t]hat Mr. Oliver was a member of **the** conspiracy charged in the Second Superseding Indictment." (D.I. 422-1 at 83 (emphasis added).) Mr. Oliver argues that because this specific language failed to instruct the jury that they must consider each conspiracy separately, the Court committed plain error. Mr. Oliver claims the error confused the jury, which led to his conviction on Counts One through Four.

The instruction was not error, let alone plain error. The jurors were aware that there were two separate conspiracies charged in the Second Superseding Indictment. The instruction was clear that to convict Mr. Oliver of a co-conspirator's criminal act, he must be guilty of entering into the conspiracy pursuant to which that crime was committed. If the jury did not find that Mr. Oliver entered the conspiracy that pertained to "each relevant offence," the Court instructed it not to convict him of those offenses based on vicarious liability. (*See* D.I. 422-1 at 83.)

Even if the Court accepts the argument that the term "the conspiracy" might, in isolation, indicate to the jury that it should consider only one conspiracy, the instructions clarified that the jury should consider the two conspiracy counts independently. *See Greenspan*, 923 F.3d at 147 ("When reviewing jury instructions, we look to the instructions as a whole, not piecemeal."). The conspiracy instruction lists the two counts separately

6

and explains that, for each element, the jury must find that the Government proved, beyond a reasonable doubt, the elements specific to the relevant conspiracy. For example, as the first element necessary to find Mr. Oliver guilty of conspiracy, the Court instructed the jury it must find that "two or more persons agreed to commit the offense charged. For Count One, that is an agreement to commit the offense of stalking. For Count Three, that is an agreement to commit the offense of kidnapping." (D.I. 422-1 at 54.) Additionally, the instruction provides separate lists of facts that might satisfy the "overt act" element for each conspiracy. (D.I. 422-1 at 61-73.) Throughout the instruction, the Court reminded the Jurors that each conspiracy required independent proof.

    The instruction on co-conspirator liability also highlights the distinction between the two conspiracies. For example, the instruction notes that "in order to prove that Mr. Oliver was a member of a conspiracy, the Government must prove that he knew of the objectives of each offense, namely stalking, kidnapping, or use and carrying of a firearm during and in relation to a crime of violence, and intended to join together with at least one other alleged conspirator to achieve these objective(s)." (D.I 422-1 at 84.) The instruction also repeatedly references "each offense," "each relevant offense," the individual names for each offense, and the separate count numbers for each offense. Because I based the instruction on the Third Circuit's Model Instruction on co-conspirator liability, and because the instructions were clear that co-conspirator liability must be

7

based on Mr. Oliver's participation in the relevant conspiracy for which the crime was committed, the vicarious liability instruction did not constitute plain error.

Both Mr. Oliver and the Government make arguments about whether there was sufficient evidence to convict Mr. Oliver on Counts One through Four. Because I conclude that the jury instruction was not plain error, I don't have to reach the question of whether there was sufficient evidence to support the verdicts, *i.e.*, whether the instruction "prejudiced or affected substantial rights," or whether a failure to correct it would "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Greenspan*, 923 F.3d at 147 (listing the steps of plain error review). A sufficiency of the evidence analysis would fall under steps three or four of the test for plain error, so the lack of plain error obviates any need for it.

In any event, the evidence was sufficient to sustain a conviction on Counts One through Four. The Government presented significant evidence that placed Mr. Oliver with co-conspirators during the commission of each of the crimes. That evidence included eye-witness testimony that placed Mr. Oliver with a co-conspirator during the relevant time period, cell phone location data that placed Mr. Oliver and his co-conspirators near the scenes of the crimes and in transit between relevant locations, security camera footage of co-conspirator vehicles in transit between crime scenes, weapons and shell casings linked to the crimes, DNA evidence that placed Mr. Oliver in the kidnapping victim's car, and expert testimony regarding the accuracy of the location data and DNA evidence. With or

without the inclusion of the Government's cooperating witness, my view is that the evidence was sufficient, and that the Government met its burden, to prove Mr. Oliver's guilt on Counts One through Four. *See Salahuddin*, 765 F.3d at 346 (noting that for Rule 33 motions district courts exercise their own judgment to assess the Government's case).

### B. Jury Confusion

A court "cannot speculate as to the content of the jury's deliberations." *See United States v. Russell*, 134 .3d 171, 177 (3d Cir. 1998). The Court assumes the jury understood and followed the instructions it was given. *See O'Brien v. Middle East Forum*, 57 F.4th 110, 122 (2023). Absent proof of improper extraneous influence, the Court will not guess or inquire as to the jury's thought process. *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 488 (3d Cir. 1984). This is true even if the Court suspects that the jury might have been confused at various points in its deliberations.

These principles mean that I cannot set aside the jury's verdict based on the note that it sent. The general rule respecting jury verdicts is enough for me to reach that outcome, but it's also important to note that I have no way of knowing how the jury broke its deadlock or reached its verdict. Mr. Oliver infers from the note that the jury's verdict was a product of its confusion. But Mr. Oliver's interpretation of the jury's is not necessarily correct. Maybe the jury's reference in the note to "One," "Two," and "Three" refers to Counts in the case, But it could just as easily refer to the three elements of Count Five. In any event, the note is just a snapshot of the jury's thinking at the moment that it sent the

9

note. It continued deliberating, and the thinking when it reached its verdict was not necessarily the same. It's true that the note and the verdict came close in time, but that temporal proximity is not enough for me to conclude the jury was confused.

Ultimately, it doesn't matter if the jury was confused when it reached its verdict. It's hard to explain complicated legal concepts, like vicarious liability, to jurors (and to many lawyers). But judges do their best, and then it's up to the jury to follow that law. Because the law doesn't allow probing or monitoring of jury deliberations, there's always a risk of a decision that's a product of juror confusion. That risk is baked into the system. As long as it's not at odds with the evidence, that's allowed.

Finally, it's worth noting that prior to delivering the verdict, the jury assured me that it had resolved any confusion about the instructions, had continued to work through any disagreement after sending the note, and had reached a unanimous verdict on all counts. Mr. Oliver asked me to poll the jury after the verdict, I did so, and each juror confirmed that the verdict was correct. The Court takes the jury at its word.

## IV. CONCLUSION

The Court's Jury instruction on vicarious liability was not plain error, and Mr. Oliver is not entitled to a new trial. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

February 21, 2023