**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**DION OLIVER** | **Case No. 1:18-CR-00075-JDW-4** |

# MEMORANDUM

A jury convicted Dion Oliver for conspiracy to stalk, stalking, conspiracy to commit kidnapping, and kidnapping resulting in death in November 2022. For those crimes, I sentenced him to a mandatory term of life in prison. Now, he claims that his counsel was constitutionally deficient because she refused to call her former client as a witness to testify in Mr. Oliver's defense at trial. His claims are baseless, so I will deny his Motion To Vacate, Set Aside, Or Correct A Federal Sentence Or Conviction Pursuant to 28 U.S.C. § 2255.

## I. BACKGROUND

In July 2018, the State of Delaware indicted 39 individuals, including Mr. Oliver and Eric Lloyd, in connection with an alleged criminal racketeering enterprise that existed from January 1, 2015, to October 15, 2017. The indictment in that case charged both Mr. Lloyd and Mr. Oliver in the racketeering conspiracy count; however, it did not charge them together in any of the other counts. Mr. Lloyd's alleged conduct involved drug dealing, money laundering, and tax evasion. Mr. Oliver's alleged conduct related to

attempted murder, firearm, assault, and endangering offenses stemming from a shooting event on June 6, 2017. At the time of that shooting, Mr. Lloyd was incarcerated in federal prison. At the beginning of the state case, Joseph Benson represented Mr. Lloyd, and Michael Huff represented Mr. Oliver.

On October 4, 2018, a federal grand jury charged Mr. Oliver and five others with various crimes resulting from the shooting incidents that took place on June 6, 2017. According to the second superseding indictment, Mr. Oliver and his co-defendant Ryan Bacon had been in a violent feud with Markevis Stanford since at least 2014. On June 6, 2017, Mr. Oliver and others conducted surveillance at the apartment complex where Mr. Stanford's girlfriend, Keyonna Perkins, lived to locate Mr. Stanford. Mr. Oliver and others located Ms. Perkins and followed her to her apartment complex. As she was getting out of her car, Mr. Oliver approached the vehicle, pointed a gun at her, and ordered her to remain in the car. Mr. Oliver eventually forced Ms. Perkins to get into the trunk of another vehicle.

Mr. Oliver and the others then drove two vehicles, including the one that had Ms. Perkins in the trunk, to Mr. Stanford's location. Upon finding Mr. Stanford, Mr. Oliver and the others fired multiple shots at him but missed. They then blindfolded Ms. Perkins and had her get into the trunk of another car. Two of Mr. Oliver's co-defendants then drove to Elkton, Maryland, pulled into a wooded area, removed Ms. Perkins from the car, and shot her to death.

As a result of the federal indictment against Mr. Oliver, the State of Delaware ended its prosecution of him but continued to prosecute Mr. Lloyd. Mr. Benson continued to represent Mr. Lloyd until December 2018. On December 14, 2018, Megan Davies took over representing Mr. Lloyd. Mr. Lloyd was convicted by a jury in June 2019 and sentenced on October 18, 2019. Ms. Davies continued to represent Mr. Lloyd on appeal until the Delaware Supreme Court affirmed his conviction on March 26, 2021.

On October 27, 2021, Ms. Davies was appointed as co-counsel to Mr. Huff in his representation of Mr. Oliver in the federal case. Mr. Huff and Ms. Davies continued to represent Mr. Oliver until Mr. Huff withdrew as counsel on August 11, 2022. Ms. Davies then served as Mr. Oliver's sole counsel at trial in November 2022. (D.I. 497-1 at ¶ 27.)

On November 16, 2022, a jury found Mr. Oliver guilty of Conspiracy to Stalk in violation of 18 U.S.C. § 371, Stalking in violation of 18 U.S.C. §§ 2261A(2)(A) & 2, Conspiracy to Commit Kidnapping in violation of 18 U.S.C. §§ 1201(a)(1) & (c), and Kidnapping Resulting in Death in violation of 18 U.S.C. §§ 1201(a)(1) & 2. (*See* D.I. 416.) I then sentenced M. Oliver to a term of life in prison. (*See* D.I. 467.) The Third Circuit affirmed his conviction and sentence. *See United States v. Oliver*, No. 23-2258, 2024 WL 3200254 (3d Cir. June 27, 2024).

On August 29, 2025, Mr. Oliver filed a Motion To Vacate, Set Aside, or Correct A Federal Sentence Or Conviction Pursuant To 28 U.S.C. § 2255. (*See* D.I. 488.) He asserts a single ground for relief, claiming that due to Ms. Davies's prior representation of Mr.

Lloyd, she had a conflict of interest that adversely affected her performance in defending Mr. Oliver. He claims that he asked Ms. Davies to call Mr. Lloyd as a witness to testify that Mr. Oliver "played no role in the stalking incident" and "was not present during any conversations concerning money." (D.I. 490 at ¶ 3.) According to Mr. Oliver, Ms. Davies refused to call Mr. Lloyd and never disclosed her previous representation of him to Mr. Oliver or the Court.

## II. LEGAL STANDARD

Section 2255(a) permits a prisoner serving a federal sentence to move the sentencing court to "vacate, set aside, or correct the sentence" where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief under Section 2255(a), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (internal quotation marks omitted).

Section 2255(b) requires a district court to hold a hearing to resolve the issues and make factual findings and legal conclusions on a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In determining whether to hold a hearing, "the court must accept the truth of the movant's factual allegations unless they are clearly

frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). The district court need not investigate a movant's claims based on "vague and conclusory allegations." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). However, if the movant alleges any non-frivolous facts that, accepted as true, would warrant relief under Section 2255(a), then the court must hold an evidentiary hearing. *See United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005).

## III. DISCUSSION

The Sixth Amendment provides that a criminal defendant shall have the right to "the Assistance of Counsel for his defence." U.S. Const. amend. VI. But not just any assistance of counsel will do; the constitutional right to counsel "is the right to the ***effective*** assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). Generally, a defendant alleging that he was deprived of his constitutional right to the effective assistance of counsel must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 684, 687 (1984). With respect to the performance prong, the defendant must show that "counsel's errors were so serious" that "counsel was not functioning as the 'counsel' guaranteed … by the Sixth Amendment." *Id.* And with respect to the prejudice prong, "[t]he defendant must show that there is ***a reasonable probability*** that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (emphasis added).

Defendants, however, do not always have to overcome the reasonable-probability burden of proof associated with the prejudice prong. For instance, "where defense counsel is forced to represent codefendants over [her] timely objection" and "the trial court has [not] determined there is no conflict," reversal is automatic. *Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (citing *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978)). If defense counsel does not object to representing codefendants, like Ms. Davies in this case, reversal is not automatic. Instead; "the defendant must demonstrate that 'a conflict of interest actually affected the adequacy of [defense counsel's] representation." *Mickens*, 435 U.S. at 168 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980)). And when the defendant attempts to do so based on his counsel's failure to take a specific action, the defendant must show that "some plausible alternative defense strategy or tactic might have been pursued" and that such alternative "was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999) (internal quotation marks omitted). The defendant "need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative." *Id.* (internal quotation marks omitted).

Even if I assume that (a) the exception applies in cases of successive representation like Mr. Oliver's[1] and (b) Mr. Oliver has shown that a conflict of interest existed, his claim still fails because he has not shown that Ms. Davies' conflict adversely affected her representation of him. Mr. Oliver argues that a plausible alternative to the approach Ms. Davies took at trial would have been to call Mr. Lloyd to testify that Mr. Oliver "played no role in the stalking incident" and "was not present during any conversations concerning money." (D.I. 490 at ¶ 3; *see also* D.I. 489 at 13.) But Mr. Oliver provides no further explanation as to how this would have been a viable alternative. Mr. Lloyd was in federal prison on the day Mr. Oliver kidnapped Ms. Perkins and stalked Mr. Stanford. Mr. Oliver does not explain how Mr. Lloyd would be able to provide testimony about how Mr. Oliver played no role in the stalking incident that occurred while Mr. Lloyd was in federal custody. Without such explanation, I can't see how he could.

Moreover – and perhaps most importantly – Mr. Oliver has not shown that Mr. Lloyd would have testified on his behalf. After all, Mr. Lloyd was actively pursuing post-conviction relief in Delaware state courts at the time of Mr. Oliver's trial, and I find it

[1] It remains an open question whether the exception to *Strickland*'s reasonable-probability requirement applies "in cases of successive representation." *Mickens*, 535 U.S. at 176. That is, "when [defense] counsel previously represented another defendant in a substantially related matter," then the defendant alleging ineffective assistance may not be subject to *Strickland*'s reasonable-probability burden of proof and instead simply have to show that a conflict of interest affected defense counsel's performance. *Id.* at 174–76. Neither the Supreme Court nor the Third Circuit has answered this question, and I need not resolve it today because Mr. Oliver's claims fail even if the exception applies.

unlikely that his lawyer, who was not Ms. Davies at that point, would have allowed him to jeopardize those proceedings by testifying at Mr. Oliver's trial. Because of these shortcomings, I cannot hold that Mr. Oliver showed his proposed alternative defense strategy of calling Mr. Lloyd to testify possessed sufficient substance to be a viable alternative.

## IV. CONCLUSION

Mr. Oliver cannot establish that a conflict of interest adversely affected his counsel's representation of him. His complaint focuses on an implausible theory that he wanted her to advance. That theory, however, did not possess sufficient substance to be a viable alternative. I will therefore deny his Motion without a hearing. Also, because Mr. Oliver has not made a "substantial showing of the denial of a constitutional right," and no reasonable jurist would debate that finding, I will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 481 (2000). An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 8, 2026